JUNE 2, 1802.

# John Reed *v.* Margaret Harrod.

*Upon an appeal from a judgment of the Danville District Court.*

A bond given for money lost at gaming was assigned to a third party, and the obligor discharged this bond by executing his obligation to the assignee for

the conveyance of land. In an action by his heir to set aside the obligation for the conveyance of the land—*Held:* That the case was not within the act providing that sales of land in satisfaction of money lost at gaming should inure to the benefit of the heir of the loser.

The action brought by Margaret Harrod, heir-at-law to James Harrod, deceased, in the court below, is founded on an act of the Virginia assembly, passed at the October session in the year 1779, entitled "an act to suppress excessive gaming." The latter part of the first section of this act, which is the only part of it that can by any construction be applied to the present case, provides that "any conveyance or lease of lands, tenements, or hereditaments, sold, demised, or mortgaged; and any sale, mortgage, or other transfer of slaves, or other personal estate, to any person, or for his use, to satisfy or secure money or other thing by him won of, or lent, or advanced to the seller, lessor, or mortgagor, or whereof money or other thing so won, or lent, or advanced shall be part or all of the consideration money, shall inure to the heir of such mortgagor, lessor, bargainor, or vendor, and shall vest the whole estate and interest of such person in the lands, tenements, or hereditaments so leased, mortgaged, bargained, or sold, and in the slaves or other personal estate so sold, mortgaged, or otherwise transferred, to all intents and purposes, in the heir of such lessor, bargainor, mortgagor, or vendor, as if such lessor, bargainor, mortgagor, or vendor had died intestate."

On considering this law, it does not appear that any of its provisions embrace the case under consideration.

*Here* was no conveyance or lease of lands, tenements, or hereditaments, sold, demised, or mortgaged; nor was there any sale, mortgage, or other transfer of slaves, or other personal estate to Reed, or to any other person, for his use, to satisfy or secure the money by him won of Harrod, and consequently nothing on which the provision in favor of the heir could operate. From the statement in the declaration it appears that Harrod executed a note of hand to Reed for £42 8, and at another time executed a bond, with David Glen his security, for £100 payable to Reed and William Harrison, both of which writings were afterward assigned to Robert Craddock, and that Harrod discharged the said note and bond by executing to Craddock one or more obligations for the conveyance of land. This circumstance so changed the nature of the transaction between Harrod and Reed that Harrod, in his

lifetime, could not have availed himself, nor his representative, since his death, of that provision in this act which delares that all bonds, &c., executed for a gaming consideration shall be void.

There is no provision contained in this law whereby money lost at gaming, and actually paid, can be recovered by the loser, or any other person, in any form of action; and therefore, as the note and bond before mentioned were executed by Harrod to Reed for the payment of money, and as Reed assigned those writings to Craddock, who does not appear to have been acquainted with the consideration upon which they were executed, and Harrod afterward discharged them, it is clear that the remedy which might have been resorted to, under the provision contained in the first part of the first section, if the note and bond had remained undischarged, is, by the discharge, completely destroyed.

Therefore, it is considered by the court that the judgment aforesaid be reversed and set aside, and that the appellant recover of the appellee his costs in this behalf expended; which is ordered to be certified to the said court.